CATO EQUIPMENT COMPANY, INC. v. VERNON MATTHEWS v. JOHN DEERE COMPANY

No. 8823DC298

(Filed 18 October 1988)

1. Sales §§ 6.1, 22.1— breach of implied warranty of merchantability—unopened crates—not products liability action—seller not protected

In an action by plaintiff for recovery of the purchase price of a crankshaft with a counterclaim by defendant based on implied warranty of merchantability where defendant received a crankshaft ordered through plaintiff in crates that were opened only by defendant, N.C.G.S. § 99B-2(a) did not apply because a products liability action is brought for personal injury, death or property damage, and there was neither property damage nor personal injury here.

Cato Equipment Co. v. Matthews

**2. Uniform Commercial Code § 20 — defective crankshaft—action for purchase price — counterclaim for breach of implied warranties — revocation of acceptance**

In an action for recovery of the purchase price of a crankshaft with a counterclaim by defendant based on implied warranties, the trial court did not err by concluding that plaintiff had breached its implied warranties of fitness and allowing a setoff by defendant of the purchase price, determining by implication that defendant had revoked his acceptance and was entitled to damages for the defective crankshaft, where the court determined that the crankshaft was cracked when defendant installed it in the engine and that the crack caused damage to the rod bearing. It is apparent that the cracks were impossible to discover prior to their use in the engine. N.C.G.S. § 25-2-316 (3)(b), N.C.G.S. § 25-2-608(1)(b).

**3. Uniform Commercial Code § 20 — defective crankshaft—breach of implied warranty — evidence sufficient**

In an action to recover the purchase price of a crankshaft with a counterclaim for breach of the implied warranties of merchantability and fitness for a particular purpose in which the judge found that plaintiff had breached its implied warranties and allowed defendant a setoff against plaintiff's complaint, there was sufficient evidence upon which the trial court made its findings of fact and its judgment. Although the record is not entirely clear on when defendant knew of the cracks in the crankshaft, once the crankshaft was installed without the knowledge that it was defective, it is irrelevant when the crack was subsequently discovered.

**4. Evidence § 40 — nonexpert opinion testimony — no findings concerning qualifications — no error**

The trial court did not improperly allow opinion testimony by defendant even though the court did not make specific findings about defendant's qualifications as an expert where plaintiff made no request for findings and the court itself was asking for defendant's opinion. N.C.G.S. § 8C-1, Rule 702.

APPEAL by plaintiff from *Osborne, Judge*. Judgment entered 7 October 1987 in District Court, YADKIN County. Heard in the Court of Appeals 13 September 1988.

In May of 1985, defendant ordered a crankshaft through plaintiff from the John Deere Company. He ordered the crankshaft and various related parts in order to rebuild a tractor engine owned by Charles Wooten. The parts were delivered to plaintiff and defendant picked them up without plaintiff ever uncrating them.

Defendant rebuilt the engine, but after only 35 hours of use it developed a knocking sound. He disassembled the engine and found that one of the rod bearings was extensively damaged as well as the crankshaft.

Defendant initially thought that he had received a crankshaft that was too small in diameter, thus causing the damage. He returned the crankshaft to plaintiff stating that it was too small. Plaintiff assured defendant that if the part were defective, John Deere would stand behind its product. Only after these assurances did defendant order a second crankshaft in January of 1986.

Plaintiff had the diameter of the crankshaft measured and found it to be the correct size. He returned the part to defendant telling him that it was not undersized. Defendant then noticed a crack in the crankshaft and determined that this was the cause of the bearing damage. Plaintiff claimed that the bearing and crankshaft damage was oil related.

Defendant was billed for the parts ordered in January of 1986 and when he refused to pay, plaintiff brought this civil action for the purchase price. Defendant answered and counterclaimed for an alleged breach of the implied warranty of merchantability and fitness for a particular purpose. He also filed a third party complaint against the John Deere Company which the trial court dismissed.

The case was tried in Yadkin County District Court on 5 October 1987, without a jury. The judge made findings of fact that plaintiff had breached its implied warranties and allowed defendant a setoff against the complaint of the plaintiff. From the findings of fact and judgment of the trial court, plaintiff appeals.

*Daniel J. Park for plaintiff appellant.*

*Zachary and Zachary, by Walter L. Zachary, Jr., for defendant appellee.*

ARNOLD, Judge.

[1] Plaintiff first contends that because the parts were received by defendant in sealed crates that plaintiff never opened, under Chapter 99B he breached no implied warranties. We disagree.

G.S. 99B-2(a) states that "[N]o product liability action, except an action for breach of express warranty, shall be commenced or maintained against any seller when the product was acquired and sold by the seller in a sealed container . . . unless the seller damaged or mishandled the product while in his possession

. . . ." Defendant did receive a crankshaft ordered through plaintiff in crates that were opened only by defendant. However, this action by plaintiff is not covered under Chapter 99B.

A products liability action is "any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture . . . of any product." G.S. 99B-1(3). This action by plaintiff is for recovery of the purchase price of the crankshaft with a counterclaim by defendant based on implied warranties. There was neither property damage nor personal injury here and Chapter 99B does not apply. *Morrison v. Sears, Roebuck & Co.*, 319 N.C. 298, 303, 354 S.E. 2d 495, 498 (1987).

[2] Plaintiff next contends that under the Uniform Commercial Code (U.C.C.) he breached no implied warranties. We disagree.

The U.C.C. as adopted in North Carolina provides that "[u]nless excluded or modified (G.S. 25-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." G.S. 25-2-314(1). Plaintiff claims that any implied warranty is excluded under U.C.C. § 2-316(3)(b) which states that "when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him . . . ." G.S. 25-2-316(3)(b).

Defendant did not examine the crankshaft before he ordered it through plaintiff, nor did he refuse to do so. The Official Comment to the U.C.C. states that in order to bring a transaction within the scope of "refused to examine" in § 2-316(3)(b), it is not sufficient that the goods are available for inspection; there must be a demand by the seller that the buyer examine the goods fully. G.S. 25-2-316(3)(b) (Official Comment, No. 8).

Under U.C.C. § 2-608, a buyer,

> may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it . . . without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

G.S. 25-2-608(1)(b). The trial court found that cracks existed in the crankshaft at the time defendant received it. It also concluded that the plaintiff had breached its implied warranties to defendant and allowed a setoff by defendant of the purchase price. By implication, the trial court determined that defendant revoked his acceptance and was entitled to damages for the defective crankshaft.

In order for a buyer to show that his revocation was justifiable, the following four elements must be proved: (1) that the goods contained a nonconformity that substantially impaired their value to him; (2) that he either accepted the goods knowing of the nonconformity but reasonably assuming that it would be cured, or that he accepted the goods not knowing of the nonconformity due to the difficulty of the discovery or reasonable assurances from the seller that the goods were conforming; (3) that revocation occurred within a reasonable time after he discovered or should have discovered the defect; and (4) that he has notified the seller of his revocation. *Harrington Mfg. Co., Inc. v. Logan Tontz Co.*, 40 N.C. App. 496, 253 S.E. 2d 282, *cert. denied*, 297 N.C. 454, 256 S.E. 2d 806 (1979); *Warren v. Guttanit, Inc.*, 69 N.C. App. 103, 317 S.E. 2d 5 (1984).

The trial court determined that the crankshaft was cracked when defendant installed it in the engine. It also found that the crack caused damage to the rod bearing. Obviously a crankshaft which was cracked and caused damage to other parts of the engine substantially impaired its value to defendant.

From the record and the trial court's findings of fact, it is apparent that the cracks were impossible to discover prior to their use in the engine. Only when the crankshaft was removed from the engine and cleaned up did defendant discover the cracks.

What is a reasonable time for a buyer to revoke his acceptance is ordinarily a question of fact for the jury. *Harrington Mfg.*, 40 N.C. App. 496, 253 S.E. 2d 282. In determining what is a reasonable time, it is proper to consider all the surrounding circumstances, including the nature of the defect, the complexity of the goods involved, the sophistication of the buyer, and the difficulty of the discovery. *Id.*

Defendant was not able to discover the hairline cracks in the crankshaft until after its use in the engine when they became

more severe and apparent. Apparently, Mr. Wooten used the tractor only sparingly and it was several months before the cracks caused the damage to the bearings. There was no unreasonable delay in defendant's revocation.

Defendant notified plaintiff of his revocation as soon as he learned of the damage to the crankshaft and bearings. He ordered a new crankshaft under the impression that John Deere would replace the first crankshaft if it were defective.

Under G.S. 25-2-608(3), a buyer who revokes his acceptance has the same rights and duties with regard to the goods involved as if he had rejected them. *See Performance Motors, Inc. v. Allen,* 280 N.C. 385, 186 S.E. 2d 161 (1972). The measure of damages for breach of warranty is the difference at the time of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted. G.S. 25-2-714(2). The crankshaft had no value as delivered and the damages were the purchase price. We find error neither in the trial court's implicit determination of revocation and damages, nor in its setoff of defendant's damages against the purchase price owed to plaintiff.

[3] Plaintiff contends that the verdict by the trial court was not supported by the greater weight of the evidence. We do not agree.

Pursuant to Rule 38(d) of the North Carolina Rules of Civil Procedure the parties waived the right of trial by jury. G.S. 1A-1, Rule 38(d). When trial by jury is waived and issues of fact are tried by the court, those findings of fact have, "the force and effect of a verdict by the jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain a finding to the contrary." *Knutten v. Cofield,* 273 N.C. 355, 359, 160 S.E. 2d 29, 33 (1968). As both judge and jury, the trial judge passes upon the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn therefrom. *Knutten,* 273 N.C. at 359, 160 S.E. 2d at 33. In the case at bar, there is sufficient evidence upon which the trial court made its findings of fact and judgment; this Court will not attempt to review those findings.

Plaintiff contends that the trial court may have misunderstood some of the facts in its findings. More particularly, it con-

tends that defendant did not know of the cracks in the crankshaft until after presenting it to plaintiff claiming it was too small. The record is not entirely clear on this point; however, once the crankshaft was installed without the knowledge that it was defective, it is irrelevant when the crack was subsequently discovered.

[4] Lastly, plaintiff asserts that the trial court improperly allowed opinion testimony by defendant. Under Rule 702 of the North Carolina Rules of Evidence, knowledge, skill, experience, training or education may qualify one as an expert. G.S. 8C-1, Rule 702.

The court itself questioned defendant about his experience in tractor repair, but did not make specific findings concerning the qualifications of defendant as an expert during the trial. On this issue, the North Carolina Supreme Court stated:

[I]n the absence of a request by the appellant for a finding by the trial court as to the qualification of a witness as an expert, it is not essential that the record show a specific finding on this matter, the finding being deemed implicit in the ruling admitting or rejecting the opinion testimony of the witness.

*State v. Bullard*, 312 N.C. 129, 143-144, 322 S.E. 2d 370, 378 (1984), *quoting State v. Perry*, 275 N.C. 565, 169 S.E. 2d 839 (1969).

Plaintiff made no request at the trial for a finding as to the qualification of the defendant as an expert. The court itself was asking for the opinion of the defendant, implicitly admitting him as an expert.

Affirmed.

Chief Judge HEDRICK and Judge COZORT concur.