■ ARELL'S FINE JEWELERS, INC., Respondent, v HONEYWELL, INC., Defendant and Third-Party Plaintiff-Respondent. AUTOMATIC FIRE ALARM COMPANY, INC., Third-Party Defendant-Respondent; AVCO CORPORATION, Third-Party Defendant-Appellant. (Action No. 1.) ARELL'S FINE JEWELERS, INC., Respondent, v AUTOMATIC FIRE ALARM COMPANY, INC., Respondent, and AVCO CORPORATION, Appellant. (Action No. 2.)— Order modified on the law and as modified affirmed without costs, in accordance with the following Memorandum: On February 20, 1982, plaintiff's jewelry store was burglarized, and $138,000 in property was taken. Plaintiff also alleges that, during the course of the burglary, various store fixtures were damaged by the intruders. Honeywell, Inc.'s predecessor, Rochester Central Alarms, Inc., had procured the burglary alarm from Automatic Fire Alarm Company (AFA) in 1976. The burglary alarm had been manufactured by AVCO Corporation. Plaintiff instituted an action in breach of contract against defendant Honeywell, contending that its losses were the result of the failure of the burglary alarm at Honeywell's central station. Honeywell instituted a third-party action against AFA and AVCO, seeking to shift liability for damages to the third-party defendants on theories of negligence, strict products liability, and breach of express and implied warranties. Plaintiff then initiated an independent action against AFA and AVCO, asserting claims for negligence, strict products liability and breach of implied warranty. AFA cross-claimed against AVCO for contribution. Following joinder of

issue, AVCO moved to dismiss the complaint, third-party complaint and cross claim asserted against it on the ground that they failed to state a cause of action (CPLR 3211 [a] [7]) and for summary judgment (CPLR 3212) on the ground that the damages sought were not recoverable upon the liability theories alleged against it. Supreme Court denied AVCO's application in its entirety.

AVCO is entitled to summary judgment on all claims sounding in negligence and strict products liability. Plaintiff's losses are purely economic and not recoverable under either theory (see, Schiavone Constr. Co. v Mayo Corp., 56 NY2d 667, revg 81 AD2d 221 on dissenting opn below; Hemming v Certainteed Corp., 97 AD2d 976). Even assuming that plaintiff's damages were attributable to the burglary alarm, they must be characterized as economic because they resulted only from the failure of the burglary alarm to perform as intended and not from any accidental occurrence (see, Richman v Albert, 127 AD2d 992, lv denied 70 NY2d 745; Antel Oldsmobile-Cadillac v Sirus Leasing Co., 101 AD2d 688, 688-689; Hemming v Certainteed Corp., supra; Fireman's Fund Am. Ins. Cos. v Burns Elec. Sec. Servs., 93 Ill App 3d 298, 417 NE2d 131). Because plaintiff's negligence and strict products liability claims must be dismissed, AFA's cross claim for contribution and Honeywell's third-party cause of action for contribution must also be dismissed. The existence of tort liability is a prerequisite to any claim for contribution (Board of Educ. v Sargent, Webster, Crenshaw & Folley, 71 NY2d 21, 27-28).

Plaintiff's third cause of action against AVCO for breach of implied warranty must also be dismissed. Since plaintiff does not seek damages for personal injury, it cannot assert such a cause of action against AVCO because the parties were not in privity (see, UCC 2-318; Butler v Caldwell & Cook, 122 AD2d 559, 560; Pronti v DML of Elmira, 103 AD2d 916; Hole v General Motors Corp., 83 AD2d 715). In addition, a breach of implied warranty claim accrues at the time of delivery. The burglary alarm system was delivered to Honeywell's predecessor in 1976. This cause of action is barred by the four-year statute of limitations (see, Uniform Commercial Code § 2-725).

Finally, Honeywell's implied indemnification claim against AVCO should not be dismissed. A third-party defendant's liability for implied indemnification is based upon breach of some duty owed either to the injured party or to the third-party plaintiff (see, Garrett v Holiday Inns, 58 NY2d 253, 259-261; McDermott v City of New York, 50 NY2d 211, 218-219, n 5). Although AVCO owed no contractual duty to plaintiff, it is

possible that some warranty duty was owed by it to Honeywell. In this regard, there are unresolved factual issues, i.e., whether AVCO made direct and public representations in sales literature to Honeywell's predecessor (see, *Randy Knitwear v American Cyanamid Co.*, 11 NY2d 5; *County of Chenango Indus. Dev. Agency v Lockwood Greene Engrs.*, 114 AD2d 728, 730; *All-O-Matic Indus. v Southern Specialty Paper Co.*, 49 AD2d 935) and whether AFA was an agent for Honeywell's predecessor in interest (see, *Utica Observer Dispatch v Booth*, 106 AD2d 863). Thus, Supreme Court properly denied so much of AVCO's motion seeking dismissal of Honeywell's cause of action for implied indemnification.

All concur, except Balio, J., who dissents in part and votes to modify, in the following Memorandum.

Balio, J. (dissenting). I agree with the majority's conclusion that plaintiff's cause of action for breach of implied warranty must be dismissed on the ground that it is time-barred and that it was error to dismiss Honeywell's third-party cause of action for implied indemnification based upon breach of warranty. I am compelled to dissent, however, because the majority has erroneously determined that the physical damage to plaintiff's property constitutes "economic loss".

Rochester Central Alarms, Inc., operated a burglary alarm protection service and maintained a central station so it could simultaneously serve multiple customers in the Rochester area. Several months after plaintiff contracted for the protection service, the alarm company purchased the Centrak system equipment manufactured by AVCO Corporation and installed that equipment at its central station. Compatible equipment was installed at the jewelry store. Honeywell then acquired the business of Rochester Central Alarms, replacing existing equipment. Plaintiff alleges that, prior to entering its jewelry store, burglars cut or interrupted telephone lines, causing an electrical signal of an unlawful entry to be transmitted to Honeywell's central station, and that, by reason of a manufacturing defect in the Centrak equipment at the central station, no audible signal of the break-in was given to a Honeywell employee monitoring the equipment. As a result, no steps were taken to prevent or minimize the physical damage to plaintiff's safe, display cases and fixtures or the theft of jewelry and other merchandise.

Plaintiff, in its bill of particulars, states that the stolen merchandise had a replacement value of $138,103.20, and that the cost of repairing or replacing the safe, display cases and other fixtures damaged during the break-in amounted to

$6,636.86. Plaintiff also seeks $2,000,000 for the loss of future business. The majority concludes that all of plaintiff's damages "must be characterized as economic because they resulted only from the failure of the burglary alarm to perform as intended and not from any accidental occurrence". I am unable to agree with this determination for two reasons: physical damages suffered by a non-user bystander by reason of the malfunction of a product do not constitute economic loss and, even assuming that the majority's analysis is applicable, AVCO failed to negate the existence of factual issues whether the equipment failed to perform as intended or whether the equipment accidentally malfunctioned due to a manufacturing defect.

I begin my analysis by acknowledging the general rule that a remote consumer or user has no cause of action sounding in negligence or strict products liability against a manufacturer for economic loss *only* suffered by reason of a product's failure to perform as intended *(see, Schiavone Constr. Co. v Mayo Corp.,* 56 NY2d 667, *revg* 81 AD2d 221 *on dissenting opn below; Hemming v Certainteed Corp.,* 97 AD2d 976). Recovery is permitted, however, for physical damage to person or property (including damage to the product itself) resulting from the malfunction of a product *(see, Schiavone Constr. Co. v Mayo Corp.,* 81 AD2d, *supra,* at 228; *Dudley Constr. v Drott Mfg. Co.,* 66 AD2d 368). It is settled law that non-user bystanders may recover for damages to their person or property *(Codling v Paglia,* 32 NY2d 330). Further, the product malfunction need not be the direct cause of injury. Liability may be imposed if the product "defect was a substantial factor in bringing about [the] injury or damages" *(supra,* at 342), and includes situations where the defect aggravated the nature or extent of the injuries suffered by the plaintiff *(see, Bolm v Triumph Corp.,* 33 NY2d 151; *Butler v Pittway Corp.,* 770 F2d 7). In the subject case, plaintiff, a non-user of the central station equipment, contends that damage to his property was aggravated by the failure of the Centrak equipment to give an audible signal, thereby preventing a response by police to the scene.

Where a plaintiff seeks to recover damages for an injury to the defective product, courts, in determining whether the damage is economic or physical, have considered whether the loss was occasioned by an accidental malfunction due to a manufacturing defect or by the failure of the product to meet the buyer's expectations *(see, e.g., Schiavone Constr. Co. v Mayo Corp.,* 81 AD2d, *supra,* at 232-234, *distinguishing Dudley*

*Constr. v Drott Mfg. Co.,* 66 AD2d 368, *supra; see also,* Gaebler, *Negligence, Economic Loss, and the U.C.C.,* 61 Ind L J 593, 595, n 8; Comment, *Recovery for Economic Loss Under a Products Liability Theory: From the Beginning Through the Current Trend,* 70 Marq L Rev 320, 345-346 [1987]; Note, *Economic Loss in Products Liability Jurisprudence,* 66 Colum L Rev 917, 918). Although this court has extended that same analysis to instances where property other than the product itself was damaged *(see, e.g., Hemming v Certainteed Corp., supra; Cayuga Harvester v Allis-Chalmers Corp.,* 95 AD2d 5, 25-26; *but see, All-O-Matic Indus. v Southern Specialty Paper Co.,* 49 AD2d 935; Prosser and Keeton, Torts § 101, at 708 [5th ed]; Gaebler, *op. cit.,* at 595, n 8; Franklin, *When Worlds Collide: Liability Theories and Disclaimers in Defective Product Cases,* 18 Stan L Rev 974, 981 [1966]), the rationale supporting that analysis has no application to the property of non-user bystanders. Simply stated, the non-user has no expectation regarding product performance at a certain level, and thus, his property is not damaged because the defective product failed to meet his expected level of performance.

The same conclusion may be reached by considering the nature of economic damage or loss. Economic damages include direct economic loss, i.e., the diminution of value of the product (e.g., loss of the bargain, costs of replacement or repair of the product) and indirect or consequential economic loss (e.g., lost profits, loss of future business opportunities, loss of ability to replace the product) *(see,* Solimine, *Recovery of Economic Damages in Products Liability Actions and the Reemergence of Contractual Remedies,* 51 Mo L Rev 977, 979 [1986]; Comment, *Product Defects Resulting in Pure Economic Loss: Under What Theory Can a Consumer Recover?,* 50 Mo L Rev 625, 626-627 [1985]; *see also,* Note, *Economic Loss in Products Liability Jurisprudence,* 66 Colum L Rev 917, 918 [1966]; Note, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages—Tort or Contract?,* 114 U Pa L Rev 539, 541 [1966]) or what has been described as "fitness loss" (product's failure to perform specific task contemplated), "expectation loss" (loss of use of product, loss of valuable deal) and "repair loss" (cost to repair or replace the damaged product) *(see,* Franklin, *op. cit.,* at 981). Although definitions may differ semantically, the essence of economic loss is that it is occasioned by the failure of the product to perform at the level of performance expected by the buyer, resulting in a loss of the bargain *(see, Hemming v Certainteed Corp.,* 97 AD2d 976, *supra).* Because " '[e]conomic loss results from the failure

of the product to perform to the level expected by the buyer and the seller * * * economic loss is almost always incurred by the owner of the product, not by persons who merely use it or come into contact with it' " *(Schiavone Constr. Co. v Mayo Corp.,* 81 AD2d, *supra,* at 232, quoting *Jones & Laughlin Steel Corp. v Johns-Manville Sales Corp.,* 626 F2d 280, 288). In the subject case, plaintiff was not a purchaser or consumer of the central station alarm system. It had no contractual relation with the manufacturer or retailer, could not negotiate a contractual remedy with either, could not inspect the equipment for defects, and as a non-user bystander, had no control over the acquisition of the central alarm system by Honeywell. Plaintiff could not suffer a loss of the bargain for the simple reason that it made no bargain. The majority offers no rationale to support a further extension of the analysis in *Hemming (supra)* and *Cayuga Harvester (supra)* to the property of parties who are not purchasers.

Even assuming that the rationale set forth in *Hemming (supra)* and *Cayuga Harvester (supra)* does apply, factual issues exist whether the damage resulted from the failure of the product to satisfy a certain level of performance or an accidental malfunction caused by a manufacturing defect. Plaintiff alleges that one or more components of the Centrak system, including a decoder card, were defective when manufactured, and that, when the alarm was transmitted from the jewelry store, the system suddenly and unexpectedly failed. Plaintiff also alleges that AVCO was negligent in its inspection and testing of the Centrak equipment. AVCO, in moving for summary judgment, was obliged to submit evidentiary materials demonstrating that no triable issue of fact existed regarding these allegations and that it was entitled to judgment as a matter of law *(see, Alvarez v Prospect Hosp.,* 68 NY2d 320, 324). Defendant submitted no direct evidence that the equipment failed to perform due to product deterioration or that it failed to meet plaintiff's expectations. AVCO attempted to meet its burden of establishing that the equipment was not defective when placed in the stream of commerce by submitting excerpts of EBT testimony to the effect that no defect was discovered during testing before shipment and that the equipment performed properly until the subject incident. This effort clearly was insufficient. The EBT witness was identified simply as an AVCO representative. He did not testify that he personally tested or supervised testing of the subject equipment. His testimony reveals only the company's *custom* of testing all equipment before shipment. Defendant failed to

submit first-hand evidence of product testing, and the record is devoid of evidence that the testing procedures were adequate to detect latent defects. We are asked to speculate and surmise that, because no defect was detected, the test procedures were adequate, and because the test procedures were adequate, there was no defect. The summary judgment movant must present evidentiary facts by a person having first-hand knowledge; such speculation and surmise cannot support summary judgment (see, Baly v Chrysler Credit Corp., 94 AD2d 781; cf., Shaw v Time-Life Records, 38 NY2d 201, 207; Shapiro v Health Ins. Plan, 7 NY2d 56, 63). Assuming, arguendo, that defendant did make a prima facie showing of entitlement to a judgment, plaintiff's evidence that the product malfunctioned by failing to give an audible signal was sufficient to raise a triable issue of fact (see, Mitchell v Maguire Co., 151 AD2d 355, 356), and defendant failed to negate the existence of that issue as a matter of law. Indeed, although Honeywell sent the suspect decoder card to Automatic Fire Alarm Company (AFA) for evaluation, neither AFA nor AVCO submitted evidence indicating whether the card was evaluated or whether it was found to be defective. Latent defects can escape inspection and testing (see generally, 1 Madden, Products Liability § 9.8 [2d ed]; 1 American Law of Products Liability 3d §§ 11:7, 11:8; Annotation, Manufacturer's Duty to Test or Inspect as Affecting his Liability for Product-Caused Injury, 6 ALR3d 91), and thus, evidence that it was defendant's custom of testing its equipment and the supposition that no defect was detected during such testing does not, in the absence of evidence that test procedures were adequate and properly performed, demonstrate as a matter of law that no defect existed. Further, the fact that a product performs as intended for several years is merely one of several factors to be considered in determining whether a defect existed before the product left the manufacturer's control (see generally, 1 American Law of Products Liability 3d §§ 3:15, 3:16), and that factor alone fails to demonstrate, as a matter of law, that no latent defect existed (see, Dudley Constr. v Drott Mfg. Co., 66 AD2d 368, supra [product failure five years after manufacture]).

In sum, plaintiff suffered physical damage to its property and merchandise, other than economic loss, and is not precluded from seeking recovery upon the theory of negligence or strict products liability (see, Potsdam Welding & Mach. Co. v Neptune Microfloc, 57 AD2d 993; All-O-Matic Indus. v Southern Specialty Paper Co., 49 AD2d 935, supra; Butler v Pittway

*Corp.,* 770 F2d 7, *supra; see generally,* 1 Weinberger, New York Products Liability § 6:11 *et seq.).* (Appeal from Order of Supreme Court, Monroe County, Curran, J.—Summary Judgment.) Present—Dillon, P. J., Boomer, Pine, Balio and Lowery, JJ.