OPINION OF THE COURT
Timothy J. Walker, J.
Defendant Oetiker, Inc. moves, pursuant to CPLR 2221, for leave to renew the court’s denial of Oetiker’s previous motion to dismiss (the prior motion). Upon the granting of such leave, Oetiker seeks an order dismissing plaintiffs claims against it as a matter of law on the grounds that the first amended complaint fails to state a cause of action against it. In support of its motion for leave to renew, Oetiker alleges that there has been a change in the law that would change the court’s prior determination (the prior determination). This matter is assigned to the Commercial Division for the Eighth Judicial District. At the time of the prior motion, the Honorable John A. Michalek was assigned to the Commercial Division, as Presiding Justice. The motion to renew, while submitted to the Commercial Division, will be determined by this court as the currently assigned Justice (see Matter of New York State Urban Dev. Corp. [Fallsite, LLC], 85 AD3d 1723 [4th Dept 2011] [analyzing CPLR 2221 (a) and (b)]). Plaintiff and defendant Jim Ando Plumbing, Inc. oppose the motion for leave to renew and, in the event leave is granted, urge the court to adhere to the prior determination.
Facts Relevant to the Instant Application
In order to properly frame the issues before the court, a brief recitation of the facts, as alleged in plaintiff’s first amended verified complaint, and upon which the prior motion was based, is in order. It is well established that in connection with a motion to dismiss, a court is limited “to an examination of the pleadings to determine whether they state a cause of action. Further, [a court] must accept facts alleged as true and interpret them in the light most favorable to plaintiff’ (Miglino v Bally Total Fitness of Greater N.Y., Inc., 20 NY3d 342, 351 [2013]).
*267 Here, plaintiff has alleged product liability and negligence claims against Oetiker. These claims are based on the alleged failure of various plumbing clamps installed as part of a new plumbing system during a total renovation of an apartment building located at 499-501 Washington Street, Buffalo, New York (the renovated premises).
At all times relevant, plaintiff was the owner of the renovated premises. On or about January 30, 2004, plaintiff entered into an agreement with defendant Savarino Construction Corp., formerly known as Savarino Construction Services Corp., to act as general contractor for the renovation of the renovated premises (the project). In turn, Savarino entered into an agreement with Ando, a plumbing contractor, to furnish materials and labor necessary for the installation of the plumbing system for the project.
Relevant here, plaintiff alleges that the plumbing system was “designed, in whole or in part, by [Ando] and/or Savarino”; that the plans for the plumbing system “called for a cross-linked polyeth[y]lene (PEX) plumbing system (the PEX Plumbing System), which typically uses clamps to secure hoses over fittings”; and that Ando purchased 1,000 stainless steel “ear clamps” (also known as cinch clamps) for use in the PEX Plumbing System (the clamps) from defendant VP Supply Corp. (first amended verified complaint ¶¶ 7-12).
Plaintiff alleges further that the clamps were manufactured by Oetiker, and were subsequently incorporated into the PEX Plumbing System during the project.
Plaintiff alleges numerous separate failures of the clamps, “resulting in failure of the plumbing joint for each instance and causing serious flooding,” with resulting damage to the renovated premises’ elevator system, fire alarm system, cabinetry, ceiling tiles and carpeting—all installed during the project (first amended verified complaint ¶¶ 15-19). Plaintiff alleges further that the clamps
“contained manufacturing and/or design defects that made the Clamps predisposed to failure by rupturing; . . . are unreasonably dangerous and unfit for their intended use in PEX plumbing systems; [and] . . . ruptured at the [Renovated] Premises causing the [PEX Plumbing System] to fail . . . causing water to flood the [Renovated] Premises” (first amended verified complaint ¶¶ 26-29, 34-36).
*268 Discussion
Motions for leave to renew are left to the sound discretion of the trial court (see e.g. Caryl S. v Child & Adolescent Treatment Servs., 238 AD2d 953 [4th Dept 1997]). Renewal may be based upon (relevant here) “a change in the law that would change the prior determination” (CPLR 2221 [e] [2]). A clarification of decisional law is a sufficient change in the law to support renewal (CPLR 2221 [e] [2]; Roundabout Theatre Co. v Tishman Realty & Constr. Co., 302 AD2d 272 [2003]).
Likewise, if a decision relied upon by a court in its prior determination was either controlling or essential to that prior determination, leave to renew should be granted (see e.g. Caryl S.).
A development in the case law of another department— decisional law that is merely persuasive and not binding—constitutes a “change in the law” for purposes of a motion to renew when, as here, the court cites to, and relies on, a subsequently reversed decision from that other department (Matter of City of New York v New York State Pub. Empl. Relations Bd., 103 AD3d 145 [3d Dept 2012]).
By way of a decision read into the record on August 9, 2012 (the August decision), and incorporated into an order granted on September 13, 2012, the court denied the prior motion, finding that the “economic loss doctrine” did not preclude recovery in tort under the circumstances of this case. The court explained its decision by citing to, and adopting the reasoning of, the Supreme Court, Nassau County, in Archstone v Tocci Bldg. Corp. of N.J., Inc. (2011 NY Slip Op 30166[U] [Jan. 19, 2011]), stating that it was “one case directly on point” (Aug. decision at 6).
Subsequent to the August decision, the Appellate Division, Second Department reversed the Archstone trial court, and rejected the reasoning relied upon by the court in the August decision (Archstone v Tocci Bldg. Corp. of N.J., Inc., 101 AD3d 1059 [2d Dept 2012]).
In this court’s opinion, this constitutes a change in the law that (based on the record in this matter) was essential to, and would have changed, the August decision. Thus, this court grants leave to renew.
Turning to the merits of the motion to dismiss, courts will apply the economic loss doctrine to preclude tort/products liability claims at the pleadings stage (see e.g. Hemming v Certainteed Corp., 97 AD2d 976 [4th Dept 1983]; Arell’s Fine Jewelers v *269 Honeywell, Inc., 170 AD2d 1013 [4th Dept 1991]; Butler v Caldwell & Cook, 122 AD2d 559, 561 [4th Dept 1986]).
The New York Court of Appeals has limited tort recovery based upon product failure by holding that when a plaintiff suffers damages resulting from a nonaccidental cause, such as deterioration or breakdown of the product itself, the injuries are properly characterized as “economic loss” and the plaintiff is relegated to contractual damages (Schiavone Constr. Co. v Mayo Corp., 56 NY2d 667 [1982], revg 81 AD2d 221 [1st Dept 1981]). Pursuant to the economic loss doctrine, “a plaintiff may not recover in tort against a manufacturer for economic loss that is contractually based, ‘whether due to injury to the product itself or consequential losses flowing therefrom’ ” (Hodgson, Russ, Andrews, Woods & Goodyear v Isolatek Intl. Corp., 300 AD2d 1051, 1052 [4th Dept 2002], quoting Bocre Leasing Corp. v General Motors Corp. [Allison Gas Turbine Div.], 84 NY2d 685 [1995]). In other words, when a product fails to perform as promised because of negligence or product defect, no recovery for purely economic loss is allowed as a matter of tort law because such claims are “fundamentally and in all relevant respects, essentially contractual, product-failure[s]” (Bocre Leasing at 694). The economic loss doctrine reflects the principle that defects related to the quality of the product are relevant to the parties’ expectancies, such as loss of bargain, and are not recoverable in tort, relegating these claims “to the law of contracts and warranty which governs the economic relations between suppliers and consumers of goods” (Hemming v Certainteed Corp., 97 AD2d 976, 976 [4th Dept 1983]).
However, an exception to the economic loss doctrine exists when a defective product causes damage to “other property” (id.; see also Hodgson, Russ; Saratoga Fishing Co. v J. M. Martinac & Co., 520 US 875 [1997]; Syracuse Cablesystems v Niagara Mohawk Power Corp., 173 AD2d 138 [4th Dept 1991]; Electrical Waste Recycling Group, Ltd. v Andela Tool & Mach., Inc., 107 AD3d 1627 [4th Dept 2013]).
In this case, plaintiff has alleged that the clamps failed to perform their intended purpose, causing damage to the renovated premises. The claims (and resulting injury and related damages) asserted in this case are similar to those asserted in Archstone (artificial stone cladding system failure, causing water intrusion and related damage to newly constructed building); Weiss v Polymer Plastics Corp. (21 AD3d 1095 [2d Dept 2005]) (siding system failure, causing water infiltration and re *270 lated damage to siding system, as well as plywood substrate); Bocre Leasing (engine compressor blade failure, causing helicopter to stall and crash, damaging only the helicopter); Hemming (siding systems failure, causing water infiltration and related damage to siding systems, as well as consequential damages to plaintiffs’ newly constructed homes); and Bristol-Myers Squibb, Indus. Div. v Delta Star (206 AD2d 177 [4th Dept 1994]) (transformer failure, causing power loss to manufacturing facility and related damage to batch processed product).
Finally, it is irrelevant whether the product failure is the result of a faulty installation, or a breakdown of the product itself (Bristol-Myers). The economic loss doctrine reflects the principle that damages arising from the failure of the bargained-for consideration to meet the expectations of the parties are recoverable in contract, not tort (id.). Indeed, “[t]ort law should not be bent so far out of its traditional progressive path and discipline by allowing tort lawsuits where the claims at issue are, fundamentally and in all relevant respects, essentially contractual, product-failure controversies” (Bocre Leasing, 84 NY2d at 694).
Accordingly, it is hereby ordered that defendant Oetiker, Inc.’s motion for leave to renew is granted; and it is further ordered that, upon renewal, defendant Oetiker, Inc.’s motion to dismiss is granted.