PAINE, WEBBER, JACKSON AND CURTIS, INCORPORATED v. W. C. STAN-
LEY

No. 8218SC179

(Filed 1 February 1983)

**1. Accounts § 2— claim for account stated—summary judgment proper**

In an action by plaintiff to collect the unpaid balance in defendant's com-
modity futures account, the trial court did not err in granting plaintiff's motion
for summary judgment on its claim for an account stated since defendant did
not object in writing to the accuracy of defendant's account debit balance
within ten days after the mailing of the statement in accordance with the
terms of the Client Commodity Agreement, and since defendant's non-
compliance, having been shown by a forecast of the evidence to be uncon-
tradicted, presented no material or substantial issue of fact to submit to the
jury.

**2. Actions § 8— counterclaim for negligent breach of contract—summary judg-
ment for plaintiff proper**

Defendant failed to forecast any evidence of a genuine material fact to
support his counterclaim for negligent breach of contract where the subject
matter of notice and alleged negligence arising from the performance of the
contract was encompassed within the terms of the written contract, and "an
omission to perform a contractual obligation is never a tort unless such omis-
sion is also the omission of a legal duty."

APPEAL by defendant from *Wood, Judge.* Judgment entered
16 December 1981 in Superior Court, GUILFORD County. Heard in
the Court of Appeals 12 January 1983.

Plaintiff sued to collect the unpaid balance in defendant's
commodity (potatoes) futures account. Defendant counterclaimed
for damages alleging that plaintiff had been negligent in failing to
properly notify defendant of adverse market conditions and in-
creased margin requirements. Plaintiff is a brokerage firm. De-
fendant is a potato farmer.

Following extensive discovery, plaintiff moved for summary
judgment. After a hearing the court granted plaintiff's motion for

summary judgment, ordered defendant to pay the account unpaid balance of $26,750, plus interest, and dismissed defendant's counterclaim. Defendant appealed.

*Womble, Carlyle, Sandridge & Rice by Jimmy H. Barnhill and Richard T. Rice for plaintiff appellee.*

*Finger, Park & Parker by M. Neil Finger and Raymond A. Parker, II, for defendant appellant.*

BRASWELL, Judge.

The issue on appeal is whether the court erred in granting summary judgment in plaintiff's favor and in dismissing defendant's counterclaim.

The uncontradicted facts show that about February or March 1979 the parties discussed the subject of defendant's opening a potato futures account with plaintiff through Jeff Unger, an employee of plaintiff who became defendant's broker. The completed paper work opening the account is dated 12 April 1979. During the preliminary negotiations defendant said to Mr. Unger that he was a potato farmer, that he wanted to open a commodity futures account for the purpose of hedging potato futures contracts against his potato crops, that he was an experienced commodities futures trader, and that he had sufficient assets to operate a commodities futures account. On 12 April 1979 the Client Qualification Information section of the Client Commodity Agreement listed the defendant as having liquid assets of $100,000, a total annual income of $100,000, and a net worth of 1.5 million dollars.

On 12 April 1979 defendant executed to plaintiff a Client Commodity Agreement and a Commodity Hedge letter. Although two other documents in plaintiff's possession, a Commodity Risk Disclosure Statement and a Declaration of Non-Residence, bear defendant's signature, he says he does not recall receiving them or returning them to plaintiff. After all aforementioned documents were in plaintiff's possession, the account was opened for the defendant and trading began in May 1979. All trades were made in May and June 1979. Defendant deposited funds with plaintiff to meet his initial margin requirements, which totaled $14,375.

The only difference between the parties as to trading activities occurring in the defendant's account concerns the number of contracts traded. Plaintiff's evidence shows 70 contracts. Without producing any supporting documents of his own, the defendant has asserted in answers to interrogatories and by affidavit that he only gave orders for 24 contracts.

After defendant placed his orders, regardless of the number, the market moved drastically against defendant's position. Plaintiff then liquidated defendant's account. During the 10-day period of 15 June 1979 through 25 June 1979 when the market moved against defendant, he made no effort to bring his account into balance. By 25 June 1979 the defendant's account showed a negative total equity, and plaintiff was forced to liquidate defendant's account, using its own funds to repurchase the 70 potato futures contracts. When the final transaction was concluded, the account of defendant showed a debit balance of $26,750.

The plaintiff's statement, dated 25 June 1979, of defendant's debit balance in the account was mailed to defendant's address. During discovery defendant acknowledged receipt of same and produced the 25 June 1979 statement from his own records. This undisputed receipt of statement forms the basis for plaintiff's claim for account stated.

There were ten or more verbal communications between representatives of the plaintiff and defendant during the summer of 1979. On 6 August 1979 defendant informed Bill Fossinger, an Assistant Vice President of plaintiff, "that he had a cash-flow problem and that as soon as his harvest was over, he would be in a position to clear up his debit." The defendant sent his handwritten letter, dated 12 September 1979, to plaintiff. The letter said:

"Dear Sir:

This is to confirm our telephone conversation that I have sincere desire to get our account peacefully settled.

As it looks to me now our funds should begin to come in the last of this month or the first week in October. Bear with us if you can. If you can't take whatever action you feel necessary.

Truly yours,

W. C. Stanley"

The defendant's answer filed 10 September 1980, admits the commodity account, and admits some transactions with plaintiff, but denies (for the first time according to the evidence) that he owed the plaintiff $26,750, and denied the accuracy of the account.

By counterclaim, defendant alleges that plaintiff was negligent in not properly notifying the defendant of the drop in the market, and any increased margin requirements due to the drop. The counterclaim does not mention a specific number of futures contracts purchased, but does allege: ". . . the defendant purchased through the plaintiff certain Commodity Futures *which are the subject of plaintiff's action.*" (Emphasis added.)

By reply plaintiff denies any negligence, and alleges that it did promptly notify the defendant of the drop in the market and of the increased margin requirements.

Defendant's affidavit for summary judgment purposes stated that he placed an order to sell only 24 potato futures contracts, that he paid the initial margin requirements for all 24 contracts, and that at no time after the market moved against him was he ever notified of any additional requirements, or notified that his position would be liquidated, and that he was *never afforded the opportunity* to limit his losses or meet margin requirements.

In order to properly understand the positions of the parties, it is necessary to consider some select paragraphs from the undisputed Client Commodity Agreement's exhibit. They are as follows:

"RESPONSIBILITY FOR LOSSES

In consideration for your carrying my account, I will in no way hold Paine, Webber, Jackson & Curtis, Inc., responsible for any losses incurred through following its trading recommendations or suggestions.

\*     \*     \*     \*

RIGHT OF FIRM TO LIQUIDATE POSITIONS OR CANCEL OPEN ORDERS

You may, in the event of my death or whenever you consider it necessary for your protection, sell any or all property held in any of my accounts, cancel any open orders with or

without notice to me, and you may borrow or buy in any property required to make delivery against any sale, including a short sale, effected for me. *Such sale* or purchase may be public or private and *may be made without* advertising or *notice to me* and in such manner as you may determine. No demands, calls, tenders or notices which you may make or give in any instance shall invalidate this waiver on my part. At any such sale you may purchase the property free of any right of redemption *and I shall be liable for any deficiency in my accounts.*

CONFIRMATIONS AND STATEMENTS OF ACCOUNT

Confirmation of orders and *statements of my accounts shall be conclusive if I do not object in writing within ten days after you mail them to me.* Communications mailed to me at the address specified hereon shall, until you have received notice in writing of a different address, be deemed to have been personally delivered to me and I agree to waive all claims resulting from failure to receive such communications. Your failure to insist at any time upon strict compliance with any terms of this agreement on your part shall not constitute a waiver of any of your rights." (Emphasis added.)

I. PLAINTIFF'S CLAIM AGAINST DEFENDANT

[1]   The plaintiff's claim is for an account stated. Within 10 days of 25 June 1979, the uncontradicted date of the plaintiff's mailing of the statement of the defendant's account debit balance to him, the defendant did not object in writing to the accuracy of the account. By such failure to object in writing in accordance with the terms of the Client Commodity Agreement the statement became conclusive as a matter of law and became an account stated. *Teer Company v. Dickerson, Inc.,* 257 N.C. 522, 126 S.E. 2d 500 (1962); *Little v. Shores,* 220 N.C. 429, 17 S.E. 2d 503 (1941).

The plaintiff's full compliance with the terms of the Client Commodity Agreement, and the defendant's noncompliance, having both been shown by a forecast of the evidence to be uncontradicted, there was no material or substantial issue of fact to submit to a jury. *Lowe v. Bradford,* 305 N.C. 366, 289 S.E. 2d 363 (1982); *City of Thomasville v. Lease-Afex, Inc.,* 300 N.C. 651, 268

S.E. 2d 190 (1980); *McNair v. Boyette*, 282 N.C. 230, 192 S.E. 2d 457 (1972).

Although the defendant would now dispute the amount owed, contending a difference in the number of contracts purchased, under the law of account stated and the Client Commodity Agreement, the defendant is precluded from attacking the underlying transaction which gave rise to the statement for $26,750. *Teer Company v. Dickerson, Inc., supra; Little v. Shores, supra.* The defendant's forecast of evidence of placing 24 potato contracts instead of 70 contracts with the plaintiff is not a genuine material fact under the parties' contract, the Client Commodity Agreement.

## II. The Defendant's Counterclaim

[2] The amended answer purports to allege a counterclaim for negligent breach of contract, and bottoms the claim on two allegations:

(1) "failing to promptly notify the defendant of the drop in the market," and

(2) "failing to promptly notify the defendant . . . of the increased margin requirements until the plaintiff had already suffered substantial losses . . . ."

The counterclaim acknowledges commodity futures were purchased through the plaintiff in the spring of 1979. While the counterclaim gives no specifics as to numbers of contracts, it does affirmatively allege that ". . . the defendant purchased through the plaintiff certain Commodities Futures which are the subject of plaintiff's action."

When all the evidence had been forecast at the hearing on the motion for summary judgment, the undisputed facts showed an express contract through the Client Commodity Agreement to deal in potato futures. This contract established the relationship and duties between the parties on the identical subject matter of the alleged counterclaim. Nothing is alleged by defendant to show a duty not arising out of contract, or to show a recognizable independent tortious breach of contract. The subject matter of notice and alleged negligence arising from the performance of the contract is encompassed within the terms of the written contract.

As stated by our Supreme Court in *Greene v. Laboratories, Inc.*, 254 N.C. 680, 689, 120 S.E. 2d 82, 88 (1961), and as cited with approval by this Court in *Construction Co. v. Holiday Inns*, 14 N.C. App. 475, 477, 188 S.E. 2d 617, 618, *cert. denied*, 281 N.C. 621, 190 S.E. 2d 465 (1972), ". . . an omission to perform a contractual obligation is never a tort unless such omission is also the omission of a legal duty." The defendant failed to forecast any evidence of a genuine material fact to support his counterclaim. *See* and compare *North Carolina State Ports Authority v. Fry Roofing Co.*, 294 N.C. 73, 240 S.E. 2d 345 (1978).

As to the trial court's granting summary judgment on the plaintiff's claim against the defendant, we find no error.

As to the trial court's granting summary judgment in favor of the plaintiff on the defendant's counterclaim, we find no error.

Affirmed.

Chief Judge VAUGHN and Judge WELLS concur.